We'll hear argument now in Next Technologies against Beyond the Office Door. Mr. Kerlin. May it please the court, my name is Paul Kerlin and I represent the plaintiff appellant, Next Technologies, Inc. I wanted to point out two things at a public and isolated debate is not created when a third-party reviewer praises the quality of a merchant's products. If that were so, then any merchant who received positive third-party reviews would then be… Mr. Kerlin, before you get too far, let me tell you what my problem with your presentation is. You were starting with the Constitution of the United States, and I wonder whether that is ever a good place to start. First question ought to be state law. What does Wisconsin state law say about problems like this? So, with respect to a limited-purpose public figure, which is the analysis… No, no, no, no. What does Wisconsin state law say about the basic question whether a product review can be the subject of a defamation action? I've tried to find any Wisconsin case saying that Wisconsin tries to regulate product reviews using the defamation law. I couldn't find one. Not one. Right? Your approach left me wondering what would happen if somebody gave a bad review to a new movie, and a lawsuit followed saying, you know, that review…our movie may not be really great. It may not be Citizen Kane, but it's better than Batman v. Superman, and the movie and the review depicted it otherwise. So, we're entitled to damages. Would Wisconsin give that case the time of day? I don't think it would, because it sounds like what the court's described is an opinion that's stated by someone, rather than a false statement of fact. If it's a false statement of fact, then there is an action in Wisconsin for defamation. And what Wisconsin case will you rely on for the proposition that Wisconsin makes actionable a false statement of fact in a product review of a commercial product? As I said, that's what I was looking for, and I didn't find any such case. I think the difference in this case, when you talk about… No, no, look, please. I'm not…I am asking you about Wisconsin law. You can't answer a question about Wisconsin law by saying, the difference in this case is X. Is there some Wisconsin case saying that an error of fact in a product review can be the subject of damages in a defamation action? Any such case, ever. I don't know that specific answer, Your Honor, but I think the difference in this case… But that's what this case rests on. It's a competitor. If there's no claim under state law, you don't think about defenses under state law, and you certainly don't begin by thinking about defenses under the U.S. Constitution. The fact that the defendant in this case posted, under the pretense of a review, he admitted in his deposition that he is a competitor and does this for a profit motive. He doesn't do it as a consumer report that's non-profit or something of that nature. So it's a statement that he's making to drive sales and defame if it's a false statement of fact, which would be actionable regardless of the media that it's…I guess… What worried me about your position…what worried me, I'll say, about your position is I find it very hard to imagine any kind of commercial interchange about relative value of products that wouldn't all of a sudden spill over into this New York Times versus Sullivan model. And I was thinking about the privilege aspect of this. You know, there is a certain privilege for, you know, false statement has to be a fact, as you say, not of an opinion. And competitors say bad things about each other's product all the time. I mean, all the time. We have a better on-time flight record at Southwest than they do over at United. You know, you could probably measure that. That's probably… Verizon, our network is better at 5G than AT&T's network. Are we going to have these resolved by defamation suits? I think that turns on the…under Wisconsin law, you look at…you have to define the controversy first. So you look at the controversy and then you're going to look at the status of the plaintiff and whether it's a limited purpose public figure, which we think… No, no, you're answering the question by looking at New York Times against Sullivan again. Both Judge Wood and I are asking questions about whether there is a claim as a matter of Wisconsin law. I believe there is, Your Honor. Forget about the First Amendment for a second. If AT&T sues Verizon under Wisconsin law by saying it is simply false to assert that our network is better than your network or your network. Echo. Echo. All right. All right. You're muted. Is someone streaming? I'm not. Mr. Malloy, are you streaming? No, I'm not streaming anything. Mr. Malloy, if you turn your microphone off, we can then test things. I will do that. I just turned it on. It was off a minute ago. Yeah, now it's off. All right. Let me try again. Let me try again. No, it's still echoing. It's still echoing. Mr. Kerlin, would you turn your microphone off? Sure. Okay. Let me try again. Yes, it's Mr. Kerlin. It's on Mr. Kerlin's end. When you turn your microphone off, the echo stopped. Mr. Kerlin, you may have your speakers a little too high. Can you turn down your volume on your end a bit? I turned that volume down. Is that better? I believe so. Yes. We'll see. Yeah, that seems to be better. Okay. That seems to be better. All right. Let me restate my point. AT&T says our 5G network is better than yours, Verizon, so you should come with us. You can sometimes imagine a response under the Lanham Act. We've seen Lanham Act litigation in commercial fights. I have never in my life seen a state law defamation action arising out of such claims. The basic question Judge Wood and I are asking in slightly different ways is whether Wisconsin state law permits a defamation action in that kind of situation. And we're looking for help on whether it does. I think it would because it still is considered a publication, whether it's online or in print. And so what case would you cite for the proposition that Wisconsin law allows a commercial entity offended by what somebody else says about its products to sue in defamation? I don't have that case readily available. I don't think there is such a case. I've looked. If there is no such case in the history of Wisconsin, I think there's a basic problem in this litigation. What does the restatement of torts say about using defamation law to pursue product-based claims? I don't have that answer either, Your Honor. I was prepared to address the issues that were raised in the order by the trial court, but it is not. I think the fact that Wisconsin doesn't have perhaps doesn't have a published case about whether or not an online review would be actionable for defamation wouldn't limit it because it still constitutes a publication. And if it's a publication, whether it's in print media, which is used less and less these days, or online, then it should still be actionable because it's the content of that speech that's an accurate, that forms the basis of the claim. That's the harm that's being done. The elements of business torts, though, are often different from the elements of personal torts. And actually, at the bottom of all of this, it seems to me that what your problem is, is a lack of success in making sure that when people Google these things, your positive things come up first, and their negative things are buried on page three or four. I mean, there's a whole industry that does that sort of thing. But again, it suggests that it's not like somebody was accusing the founder of your company of some horrible moral defalcation, which would be a personal defamation action, as opposed to just there's too much grease on the risers of this thing, or it wobbles a lot, whether it does or not. I mean, it's a different kind of tort, actually, than a personal defamation. A company can still be defamed. I mean, it's the value of the company that's being harmed by this. And the statements that the defendant made, when we took the deposition of the corporate representative, he testified that he had done this review and that he used this review website to drive traffic for his own product sales. And so there is a motive kind of behind it. And then he was successful in that venture in being able to, yes, promote the organic searches, as the court pointed out, to be above our client. But it doesn't give him free reign. And we do have redress under the law when there are false statements of fact. And the trial court's analysis to say that we're a limited purpose public figure was erroneous because there was no public controversy. When you define the controversy, there wasn't a public controversy about the quality or the performance of my client's desk, the two desks that issue, the Evo desk and the Terra, that preexisted the posts. And the evidence in the record that was cited by the defendant, a wire cutter, two positive reviews, well, that doesn't put something in controversy. That's not a dispute. Do we know when those positive reviews were generated? All I could find was a screenshot of something in 2020, which didn't seem to tell me anything. I mean, in the record. I'm not asking your personal knowledge. Right. In the record. So there was an article that was done by Wire Cutter in August. It was August 29th of 2013. And it praised one of our products, the Terra, and said it was the best in class. See, what I don't know is when did you pull nice things out of that article and put them on your website? Since I didn't see evidence of that. Right. It did occur after that. At some point it happened. By 2020 it had happened. But it might make a difference under your theory. When? I believe it would have been posted shortly after that article was done. But do we have evidence of that? Did you submit that to the district court? I didn't see it in the record either. I don't think so. But I'm not trying to establish that there was a public controversy. I mean, it's our position that there was no controversy until the defendant created it. And that it's not a controversy. I think when you look at the scope of the controversy, so under Wisconsin law, you have to look at it must be something for which there's a real dispute. And the U.S. Supreme Court has said that a defamation plaintiff just responding to things does not make it, does not create the controversy. And so anything that we would say in response, or after the litigation had started, would not create the controversy. So you have to look at before the posts were made. Why wouldn't the Wirecutter article, the 2013 and 2015, show that there's a public controversy here? Well, in the articles, they said everything was good about the product. They didn't say anything was bad. And so if they don't say anything's bad, then there's not anything at controversy. No difference in a lawsuit. They switched products. I mean, they switched products from 2013 to 2015. It compared them. It talked about the Ergo Depot Jarvis standing desk having better features than the other products. Right. But they didn't say anything negative about the Terra. They did make, they said that the only negative they decided. They said it had a better control panel than the Terra. Why isn't that negative? It didn't specifically address the quality. Isn't a control panel part of the quality? It is. Well, it's part of the desk. But nowhere in either article did it address the Evo desk, which is the other product at issue. It never shows up. So, Mr. Curlin, I'm going to just circle back to where I started on this when I picked up the briefs. I want you to tell me whether every business dispute over a product is something that jumping, you know, put defamation law to one side makes the disputers and the others limited purpose public figures such that all business disputes have to be resolved under this actual malice standard. I don't see any stopping point in your theory. I don't think, well, so I think I understand the question. At some point, you know, giving you the benefit of the doubt, at some point, you contend that a debate arose in the public sphere about the relative quality of all of these standing desks. And in the course of that debate, defamatory things were said about your client's product by the guy who runs the other company, by the guy who runs beyond the office door. And I'm saying, suppose all of that's true. You know, I wouldn't have time to give you the number of examples. We've talked about a few of business debates where the gist of the public debate is we're better than you. No, we're better than you. We're better than everybody. And I'm shocked to think that that's all constitutional law. And I haven't seen a stopping point in your rationale. I haven't seen, well, this set of cases spills over into the actual malice standard, but this other set of cases doesn't. I don't see that kind of line in your theory. If there was a controversy, well, throughout it all, you'd still have to show that it's a false statement of fact and not opinion. So I want to make sure that's clear as well, because if it's a statement of opinion, then that's not actionable under defamation law and never has been. So it would have to be a statement of fact that is incorrect. That would be one limiting area for it. The second would be is that if it is a matter of public controversy, for instance, the Wisconsin case, Bayview Packing Company, they're looking at the quality of water and water that's used in a food product. That was a public controversy. And so you then had to show actual malice because it was a public controversy. There was a concern about public safety and that needed to get out and the public needed to be educated. Okay, this is a Wisconsin case. Suppose a seller of oleomargarine runs an ad saying, our oleomargarine is just as good as butter. And, in fact, they run those ads. And this being Wisconsin, a producer of butter, sues and says, look, it's just a fact that butter is better than margarine. It's better for you. It tastes better. And it's better for Wisconsin. That's just a question of fact. And it's also a well-known fact that Wisconsin butter is better than any other state's butter. And we're going to litigate this under the law of defamation in Wisconsin. Is that really what Wisconsin courts would do? I don't think so. I don't think you'd take the case because butter is not oleo. That's the difference. So saying that one is better than the other is necessarily an opinion and not a statement of fact. No, that's what the defendant would say. But the plaintiff would say it's a fact. And, actually, the fact that it's a fact is embedded in Wisconsin law, which discriminates against oleomargarine in every conceivable way, every way the Supreme Court will let them get away with, based on a finding by the state legislature that it's a fact that butter is better. And that they're competing products, I might add. And, actually, to take this same sort of example on the fact opinion line, when you look at those photographs of the grease on one of the desks that was evaluated and you also say there's too much wobble, that sounds like opinion to me, if it's going to wobble a little tiny bit or maybe you don't mind wobbling. I don't know. There was a lot in what you're complaining about that struck me as potentially characterizable as opinion. But I think when there's specific statements about features of the desk that were or were not included, for instance, anti-collision protection or overload protection, that's like saying a car does or doesn't have anti-lock brakes. It's a statement of fact, and it's demonstrably false. And the court acknowledged that in its opinion when it said some of the statements included in the review are arguably false. Arguably false, but I read them in some ways as saying maybe there's an anti-collision protection, but it's not what it was represented to be because he put the actual weight that was supposedly at issue and it didn't stop and, oh, well, it's actually a bigger weight. So another way of thinking of it is it's just not good enough. And that might be a matter of opinion. Maybe a lot of people don't want to put 400 pounds on their standing desk. I wouldn't. I see I'm out of time. As long as we're asking questions, you can keep on giving answers. Thank you. I appreciate that. When the statement in the article is no anti-collision protection, it's not that it didn't work well. No, it's that it doesn't exist. And when he holds himself out to the public as an expert in these desks and then doesn't even know how to level them to test them, we think that went to our proof that he actually had knowledge of what he was doing and set this test up so that his products would look good and everybody else's products would look bad and used it under his business scheme to drive business to his website. Okay. Okay. Thank you very much, Mr. Kerlin. Mr. Molloy. Good morning. May it please the Court, Counsel Mark Molloy from Meissner, Tierney, Fisher & Nichols in Milwaukee, on behalf of Beyond the Office Door, who I'll refer to shorthand as BTOD. The main question, before I get into the public purpose, I want to start with the questions that were posed by Judge Easterbrook and Judge Wood. This is an unprecedented case in Wisconsin. There is no Wisconsin case that I'm aware of to suggest that one company can sue another company in defamation for, essentially, as Judge Wood stated, a business dispute for one company saying their product is better than another. The closest thing we have in Wisconsin is the Converter's Equipment Corporate Condes, C-O-N-D-E-S case, 80 Whist Second 257. That's a 1977 case which talks about the limitations of commercial defamation in Wisconsin. And that case stands for the proposition that in order for one company to have a commercial defamation claim against another, there has to be some charge of dishonorable, unethical, unprofessional conduct in the trade business or profession capable of a defamatory meaning. In this court, in Isaacson v. Vermont Castings, 825 F. Second 1158, upheld that limitation. So, not only is there no case on point on this fact scenario, but Wisconsin has a long history of limiting commercial defamation. And we raise that issue. It's addressed in Judge Conley's decision at footnote 5. He doesn't get to that issue because he found on the limited purpose public figure issue and no actual malice. And because of that, I can address that. The main question on public controversy. Do you agree with the district court that it's proper to resolve a constitutional issue ahead of the state law claim? No, I don't. And to be honest with you, I don't. It's pretty fundamental. I don't know how many times we or the Supreme Court have said you always start with whether there is a claim and constitution comes later. Correct. And that's why we raised the converse case in our briefs, our original briefs. But I'm left with what the district court decided. But one of the issues that was addressed was this wire cutter dispute. And before we even get to that, I think we have to define what a public controversy is with regard to these review cases. And there's not very many review cases nationwide. The two cases that Judge Conley talked about were the stakes unlimited case and the quantum electrics case. And in those cases, the ongoing. The question was, so long as there was an ongoing public debate. Consumer before the defamatory statements were made, the consumer reporting discussions over the quality of products constituted a public controversy. So in this case, applying those controversy, even if all of the articles are saying this is the greatest product ever manufactured. Why is that a controversy? It's a. Well, it's the courts and stakes unlimited and quantum electrics use the word public controversy because it's a public controversy, because the question relates to consumers as a whole and not just the two people who are in the lawsuit, not the issue relates to safety or not safety, quality of the product. So so is it so? So could could I just take, you know, a monthly issue of however, they come out these days of consumer reports and just go down and make a list of all the products that are reviewed and say, well, now there's a public controversy over all of them. Well, it's funny you say that, because one of the stakes unlimited case deals with with consumer reports. And that's exactly that was exactly the point in order. It is a public in that the the court termed it a public controversy because they said the controversy was not just important to the two people who were the parties in the case. It was important to. The public as a whole and the consumer purchasing the products, does it become a public controversy just because you speak highly about one product as consumer reports might, or do you have to speak highly about one product and poorly about another in order to make it a public controversy? Well, I think I think it is. It becomes a public controversy whenever you speak of the nature and quality of the product itself, because the consumer is is interested in the nature and quality of the product itself. So whether it's good or bad, it is part of the, quote, unquote, public controversy. So just one product talking about one product would be enough. It's your view. You don't have to compare it to others. I believe. Yes. Yes. So the question becomes, then, in this case, applying those cases and setting aside that Wisconsin does not recognize this cause of action, applying those cases. Was there a public controversy before? B.T.O.D. made these blog posts in 2017 and 18, and that's where the wire cutter issues come into play, because we have articles back in 2012, 2013, from publications and Web sites that not only discuss the quality of standing in tests in general, but they also discuss next technologies tests in particular. So there is a difference. Doesn't it make a difference whether next was part of this debate? As far as I can tell from the record, there's no evidence that they joined whatever. I mean, I have a little trouble calling a controversy a discussion or vice versa. But they joined the group only after B.T.O.D.'s initial, you know, eight problems, whatever it was, review. Well, I think that's why the wire cutter. So they're part of the public controversy, even though they're not saying a word? I think that's where the wire cutter issue really comes into play, because the wire cutter was not just it was not just that wire cutter gave them a positive review in 2012. They named wire cutter, named them the top desk in 2013, 15. I'm sorry, 2015 wire cutter moved them from number one to number two. And in response to price, it seemed because of price. But there was also because of stability issues in the in the wire cutter article in response to that. In response to that, then next technologies publishes a criticism of wire cutter and says the rankings of wire cutter were the results of kickbacks. This is in 2015 and that their products. And they also say in that response that their products, next technology products, are the superior product on the market. I think the mere fact that they're being reviewed by these national publications makes them part of the quote unquote controversy. So when exactly did next publish this kickback assertion? It was 2015. How does it relate in time with? It was 2015. It was it was four year, three years, almost three years before BTOB did this. And that's referenced, Judge, on in, I believe, proposed findings of fact 57 to 61. It's referenced in page 13 of Judge Conley's decision entitled the public dispute regarding quality of standing desks. So this is well before BTOB ever entered the quote unquote public controversy that you have not only next technology placing these positive reviews on their Web site, but also publicly challenging anyone and everyone who gave them a battery. If that's not injecting yourself into a public debate, I don't know what is. And that's why I think the wire cutter we've we're seeing a new argument here on appeal that the Web sites that BTOB has not stated or did not state at the district court level. When next technology posted these positive reviews on their Web site and that BTOB did not state at the district court level when next technologies began doing the same thing BTOB does, and that is reviewing other competitors products. Those are new arguments that we think are waived. But setting all of that aside, the wire cutter dispute where they challenge wire cutter injects them into this quote unquote public controversy. The next step once you do that is once we once we move on to that is are the defamatory statements germane to the controversy. And I don't think there's any dispute here that the BTOB statements spoke about the quality of standing desk. So I and nobody's really disputing that. So then we all three factors are met and we move on to actual malice. And that's as we say in the brief, it's important to keep in mind here that a couple of things. One, it's a clear and convincing standard, even on summary judgment. They need to show by clear and convincing evidence that BTOB or Mr. Knightman, Knightman, Knightman knew that these statements were false and that he entertained or that he entertained serious doubts. And we tick off each basis in our brief. And I don't want to go through that. But I just want to actually loop back to one thing, Mr. Short, which is the timing of next response to that 2015 review. In the record, it looks like it doesn't come along until 2018. You know, they're just citations to documents in the briefs. But if it if they don't publish until 2018, which is after you publish the topic problems, the situation looks a little different. I think, Judge, it was 2015 where that's when the wire cutter things. But I tracking these citations down might not have been until 2018. I still think that they're part of the public controversy before our statements. But I believe it was in response to a 2015 review that I know. Yes, it certainly was next. And that that is. Oh, sorry. That is proposed findings. In fact, 57. That's a new argument that's being made on appeal here, though. Had they made that argument, we certainly would have. We certainly would have pursued when these. Articles were posted on their Web site. We certainly would have. And it's certainly because many of the reviews were before 2017 that appear on their Web site. The the article itself, I believe, refers to an email sent from next to the wire cutter that was dated April 22nd, 2017. So the response to this wire cutter article presumably has to be after April 27th, 2017. Well, our first publication was November 1st, 2017. So even if it was April of 2017, that would still be before our. Correct. It's sometime after April 22nd, 2017. It's hard to tell from the record exactly when. But it couldn't have been on the heels of the 2013 article. And. But but you're right that no one made anything of this in the trial court. So it does look new. Correct. So I guess we get back to we get back to actual malice. And. Well, I'm not going to tick off every everything. I do want to talk about the stability issue because I think it's a good example here of what we're talking about. He Mr. Knighton in his blog post or blog post showed exactly how he determined that the stability issues and that there were stability issues in the terror. And again, that's an issue that was identified by Wirecutter back in 2013. It's not a new issue. So next position is essentially that there was an actual malice because Mr. Knighton holds himself out as an expert. Another new argument and that an expert should know that you need to level the desk when when doing that. When determining stability. But the question there is, does that make the failure to level make that false? And it does. Maybe it maybe it makes the conduct negligent. But we're talking about actual malice. We're talking about known falsehood. And we have a situation here where not only on the stability issues, but on the other issues, the the lubrication issues where we have photos showing this is evidence of lubrication. The anti collision. We have a showing a video which shows exactly what he did. Mr. Knighton showed his work here. So if they disagree with it and even if they rise to the level of negligence, it still doesn't rise to the level of actual malice. And we think Judge Conley got this right, even though we believe he should have started with the first issue that you all identified today. Thank you, Mr. Malloy. Thank you. The case is taken under advisement.